The next case called matter of J.M. There has been a motion to cite additional authority. And, uh, Council, if you want to respond. Good morning, your honors. This is a case involving Jumante. It's a minor, age 13 at the time of the offense. But he was found unfit to stand trial and likely never will be fit. Jumante was found unfit to stand trial on June 22, 2011. About ten months after the offense, which occurred on August 30, 2010. Ten months in which he would have matured, had gained a little bit more experience, learned. But he's still unfit to stand trial. And, uh, as I said, likely is not going to attain fitness anytime soon. I'd like to point out that in the brief I make one mistake in not having a not not guilty. I saw that. Three times on that page. The wonders of work processing and computers. The joy of computers, yes. We have a not guilty finding here at a discharge hearing. And the long way of saying that is that the court found Jumante could be proven guilty beyond a reasonable doubt at a trial. He's not going to discharge him from any further proceedings. And so if he were to become fit, he might stand trial. There was a report by Dr. Daniel Junio dated April 25, 2011 that detailed Junio's opinion that Jumante was not fit to stand trial. And I want to point out to this court that essentially at the basic level, he's found unfit for the same reasons that we're saying that his confession should be suppressed. That he does not understand Miranda. He did not knowingly, voluntarily, and intelligently waive his Miranda rights simply because he does not understand what goes involved. And he was given the rewritten one that Dr. Junio wrote? Himself. Is that correct? That's right. And Dr. Junio testified that, yeah, he had helped rewrite those and they were simplified. But in Jumante's case, it didn't matter because he just does not operate at the same level as what those are designed to be. Jumante doesn't understand the court process. He doesn't really understand the people involved. He doesn't understand the concept of remaining silent. That's one thing that Dr. Junio pointed out that, you know, you can tell him he doesn't have to talk, but he really doesn't understand that. He does not understand the adversarial nature of the entire process. And the most important part is he does not understand the consequences that go along with it. Jumante functions at the mild, minimally retarded range of intelligence. But to put it simply, Jumante functions as a seven or eight year old. And seven and eight year olds usually read at maybe a first grade level, and that basically is what he does. That's what his understanding of the world is at the seven or eight year old child level. Dr. Junio testified in his report that Jumante could not knowingly and intelligently weigh his Miranda rights. He is not capable of reading or understanding the Miranda form. And Dr. Junio testified he questioned Jumante about the understanding of his Miranda rights and concluded that Jumante could not understand all the concepts involved in that waiver. Dr. Junio reported that Jumante never understood the warning that anything he said could be used against him in court, which is one of the most fundamental and basic principles for the knowing and understanding waiver of Miranda. If you don't understand the court process and you don't understand what might be happening in court and how you could be found guilty of some offense, then you're saying, yes, I understand, to the police officer. It just doesn't mean anything. That's basically what occurred in this case. The police officers simply testified that they believed he understood, but they really didn't make any great effort to figure out what his level of understanding was and why he might not understand these alleged simple concepts to them. Their goal was to get a confession, and that's what they got. You have to wonder about police officers who testify that they have never had an interrogation of a juvenile in which they did not think that the juvenile was unable to understand Miranda. That is just a matter that everybody has to understand Miranda. We all are intelligent. Well, Givante, unfortunately, is not that intelligent. Because of his limited intellectual ability, Givante was very suggestible and was easily led, and that is quite characteristic of mildly mentally retarded individuals. And you will find a great deal of literature on that that we cite in our brief. The Law Review Journal article, Words Without Meaning, that was cited by the Illinois Supreme Court in one of their cases, WF. Dr. Cuno admitted that while Givante may have been read and memorized on prior occasions, that does not mean that he would have understood them or remembered them, and that's very important. I mean, you can be read things numerous times, and if you just do not retain them and do not really remember it, it doesn't mean anything to you. Mr. Evers, the state spends quite a bit of time on the Illinois Supreme Court case WC. Yes. Can you distinguish that case? Givante is much younger and he's much limited in terms of—well, let me go back. The main point is that he was found unfit for exactly the same reasons that you would want to have him making a knowing and intelligent waiver of Miranda, and there was not this finding of unfitness and finding that he had this mental limitation that caused him not to understand what court processes would be. I think he had an IQ of 48, or at least that's what— That was what was reported, yes. Reported. And the state does point out that there is no right-minded rule, but— He also was the same age. He was what? The same age, I believe. That's right. He was very close. But it is the finding of unfitness by the same expert that testifies unrebutted in this case for the motion to suppress. That is the key finding. And I can only go back to the circuit where it relies upon Dr. Cuno's opinion in finding Givante unfit, but then does not really do anything to justify rejecting his opinion in finding that there was a knowing and intelligent voluntary waiver of his Miranda rights. Well, isn't the court supposed to give the entirety of the circumstances, and it's the court's prerogative to determine within that panorama of circumstances what weight to be given of an expert opinion, even Dr. Cuno's? There is a matter of discretion, but that discretion has to be exercised wisely, judiciously. That discretion has to be justified. And the only justification that he gave was the same one that was based upon the police officer's testimony, which was, well, we really thought he kind of understood. Isn't that a question of the trial court judging the credibility of those officers? There is a credibility determination there, and in looking at that credibility determination, it really is very important to look at, well, we never have found anybody not to understand Miranda when we explained it to them. And that is one of the vicious cycles for the military, that people judge them and base their responses upon what they think those who don't have those limitations would give, and therefore that's what we believe that they mean and understand when they say, yes, I understand. Consequently, we urge your honors to reverse the decision to not suppress the confession and remain the case. Thank you, Your Honor. Thank you, Counsel. Counsel? You need an extra minute or two. You're welcome to take the floor. So may it please the Court. Counsel? My name is Sharon Shanahan, and I represent the people of the state of Illinois. In Respondent's reply brief and here before this Court, Counsel emphasizes what he calls the overwhelming difference between this case and the cases cited by the state, because J.A.M. was found unfit to stand trial, which is obviously the purpose of the motion to cite additional authority that I've placed before this Court, because both this Court in 1979 and the First District last year have noted that the standards to be met for determining fitness and the admissibility of a confession are quite different. The two criteria contrast strikingly. A finding of unfitness under one test does not mandate such a conclusion under the other. So this extreme emphasis on the fact that he was later found unfit to stand trial, it's something that just doesn't have the weight that defense counsel is intending to place on it. I think the most important thing for this Court to do in this case is to watch the video of the interview, because I watched this young man, and I understand why these police officers had no idea that his mental capacity was limited. He gives no indication whatsoever. And I think we need to look at that in contrast to Dr. Cuneo's opinions. First of all, as you notice, Your Honor, these are the simplified version of Miranda, to where they can be understood by a fourth grader. And they were prepared by Dr. Cuneo. Yes. Dr. Cuneo says that JM can only read first grade level, but reading comprehension and understanding comprehension are two different things. But Dr. Cuneo said it was appropriate for a fourth grader to read. To read. Okay. Excuse me. Dr. Cuneo said it was made for a fourth grader to understand. Okay. And this young man was 13 years old but had a reading level of first grade. But it was his opinion that he didn't understand at a fourth grade level either. It was. Apparently. Apparently. But still, when you go on to see how he describes these amended Mirandas, the words would be simple for every utterance. There would be only one thought. They are quite simple. And these Miranda rites, these simplified Miranda rites, were not only read to the defendant, but they were explained to him. The other thing that's important in comparing Dr. Cuneo's testimony to the interview is Dr. Cuneo relies greatly on the fact that the respondent has an impaired memory, both short-term and long-term. And yet when you look at this interview, the respondent gives coherent, unassisted recollections of the morning's events prior to and during the fire, and most of his explanations are his explanations. This is not a case where you have a lot of police officers saying, isn't it true that you did this, this, and this, and the person you're interviewing is saying, yes. This is him telling what he did that morning. Then he goes on talking about a significant time before the fire when they're asking him about his co-defendant, Stephen Vance, who had stolen some items. And this is some time before this fire, and the respondent was not only able to recall the specifics of the theft that his co-defendant had committed, but where the items were stored and who he sold them to and how much he sold them for. That doesn't sound to me like someone with an impaired memory. His short-term memory, he can recall what happened the day of the fire. His long-term memory, he can recall these items that his co-defendant had stolen, when he sold them, who he sold them to, how much he sold them to. And I think it's also important to note that both of the officers who interviewed the respondent were juvenile officers, so they've had special training. And they both testified that if they had any doubts as to whether the respondent understood, they would not have continued the interview. Now, Veronica, you asked opposing counsel to distinguish WC, and I really didn't hear him do that. WC was 13 years old. JM is 14, I believe. WC had an IQ of 48. JM has an IQ of roughly 55. Psychologists testified in WC that mild mental retardation, chronical age equivalent to a 6- or 7-year-old, wouldn't have understood a lot of the words, incapable of understanding his Miranda rights. And yet the assistant state's attorney testifies that she orally explained that he sees Miranda rights in a simplified version. She had no trouble communicating with him. She saw no evidences of significantly impaired mental functioning. They gave her the impression that he didn't understand, and he reflected that he understood through his eye contact, demeanor, and communication skills. And Police Officer Fine, who was also present, said much the same thing. And the Illinois Supreme Court says, and I'm quoting here, there was no question that the evidence of the objective circumstances surrounding WC's waivers supported a knowing and informed waiver of rights. Going back, Justice Chapman, to what you were discussing with opposing counsel towards the end of the trial court's ability to see this young man testify and, I mean, see the interview, make this determination, the WC court noted the uniquely advantageous position when evaluating a witness's subjective mental capacities, capabilities. And the Supreme Court concluded that the trial court's firsthand assessment led to a conclusion that WC could knowingly waive his Miranda rights and that that was not against the manifest weight of the evidence. When you look at the facts of WC and the facts of this case, it's just directly on point, and it's very hard to see. And when you take the controlling authority of WC and then you watch this interview of this young man, you understand why everybody thought that he was capable, he appeared to be. And I don't think you can look at that interview, look at the Supreme Court case of WC, and say just because Dr. Cuneo disagreed that the trial court's decision was wrong. Do you think that Dr. Cuneo's in any superior position than maybe some other psychologist as being the one who actually rewrote the Miranda warnings for someone that's impaired? And you said mildly, I think it's moderate at the point both WC and this defendant is. I don't see that Dr. Cuneo is in any better position than any other psychologist. In any case, we don't have another psychologist. To me, his very testimony at trial weakens his claim that he couldn't understand this because they are so simplified. They're not just only simplified, they're simplified and explained. And as I say, you look at that and you see this interview. This is a young man and he knew how to get him. He wasn't easily led. That's one of the things that counsel said, that he was easily led. He wasn't. They said, oh yeah, you lit the flare, didn't you? And he said, no, I didn't light the flare. He adamantly maintained that he didn't do that. The police asked him if he had been with another, with his co-defendant at these other crimes and he said, no, he didn't just agree with everything the police had said. He was not suggestible. He was not easily led. He would say, that's wrong. No, I didn't do that. No, that's not correct. Here's what happened. These are easy words to say, very suggestible and easily led. But I don't see a young man who is very suggestible and easily led. I see a young man that understands what's going on, that's able to recount the events of the morning. That when police officers say something that he disagrees with, he disagrees with it. When the police officers suggest that he committed another crime, he says, no, I didn't do that. He stands up for himself and that's why this case needs to be looked at on its facts. Not make just a broad conclusion about all mentally retarded juveniles and not just make a conclusion that because Dr. Cuneo says so, it must be so. You need to look at whether this young man is understanding what's going on. It is not suggestible. It is not easily led. When you look at the Supreme Court's decision, when you look at this video, I think everything supports the trial court's decision before. And I don't think that it matters at all that he was later found unfit to stand trial. This court has said so many years ago. The first district said so last year. And for all of those reasons, we would ask that this court vote aye. Thank you, counsel. Counsel? I was just given the motion to sign additional authority this morning. But I did read it over. You've got a chance to reply. And I think I'll file a reply. But I would suspect that my reply will be something like this. None of those people found unfit were found unfit because they couldn't understand the court proceedings because of their mild retardation, limited intellectual functioning. They were found unfit for other reasons. There's lots of reasons why he found unfit. If they were found unfit in the case that the state cites, I'm sure that the state would have put it in their motion to sign additional authority. So I don't think that it probably is going to make that much difference to this court. Because, again, we're not arguing that you make a rule that just because you're found unfit means that you can't validly enter knowing, intelligent, and understanding waiver of Miranda. But you have to look at why Devante is found unfit in this case. And that is because he just does not understand those concepts. And those concepts in Miranda are very much tied to being able to understand what's going on in court. I mean, if you just do not understand what court is and how you can be hurt by being in court, then being told you can remain silent and anything you can be used against you in court does not mean anything to you. And that's why Dr. Cunha found that Devante could not make a knowing and intelligent waiver of his Miranda rights. And there was really nothing else to contradict that. Now, the state will point to what occurred on video. But, again, that relies upon Devante understanding what's really going on around him. Consequently, Your Honors, we believe that the circuit court was wrong in not suppressing the confession. That is against the man's best way to the evidence. And we urge Your Honors to reverse. Thank you. Thank you, counsel. We appreciate the brief and arduous counsel in the case under advisement.